UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARIA GALEAS | CIVIL ACTION |
| VERSUS | NUMBER: 18-00121 |
| STAFF PRO, LLC, ET AL. | SECTION: "I"(5) |

**REPORT AND RECOMMENDATION**

Before the Court is the motion for attorneys' fees filed by Plaintiff, Maria Galeas ("Galeas"). (Rec. doc. 27). Galeas sued the Defendants, Staff Pro, LLC ("Staff Pro") and Marriott Hotel Services, Inc. ("Marriott") on January 3, 2018, claiming underpayment of regular and overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207 and 206. (Rec. doc. 1). She settled her claims against both Defendants for $1,500 during a settlement conference held on June 1, 2018.[1] (Rec. doc. 25). The matter of her entitlement to attorneys' fees[2] was reserved for determination by the Court. (*Id.*). The District Judge referred that question to the undersigned, and I have received briefing and held a hearing on Galeas' motion. (Rec. docs. 29, 30, 39, 40).

**I.    LAW AND ANALYSIS**

   *A.  Relevant Background*

In her initial Complaint, Galeas alleged (among other things) that:

> Defendants regularly fail to pay Plaintiff for all hours she worked in a work week. On average, Defendants fail to pay Plaintiff for at least four hours of regular and/or overtime hours per week.
>                              [and]

---

[1] The Defendants correctly note, and Plaintiff does not dispute, that Galeas' opening demand at the settlement conference was $21,000 inclusive of attorneys' fees.
[2] Strangely, Galeas seeks to recover no costs by way of the present motion.

> Defendants willfully violated Plaintiff's rights under the FLSA because Defendants knew or showed reckless disregard for the fact that their compensation practices violated the FLSA. Defendants were and are aware of the custom and practice of overtime pay from their experience and expertise in the industry in which they work.

(Rec. doc. 1 at p. 4).

Plaintiff also alleged that the Defendants were joint employers and sought the certification of a class:

> consisting of all current and former employees of the Defendants who are or have been employed by Defendants during the three years immediately preceding the filing of this suit as hourly or non-exempt employees and who, during that period, failed to receive compensation for all regular and/or overtime hours worked in a work week.

(*Id*. at p. 5).

On behalf of herself and the alleged "FLSA Class," Plaintiff prayed that the Court issue an order:

a. Certifying this case as a collective action under 29 U.S.C. § 216(b) and ordering that notice of the lawsuit be issued in an effective manner to the FLSA Class so that similarly situated employees may promptly file consent forms and join this action, 29 U.S.C. § 216(b);

b. Entering judgment in the amount of all unpaid regular and overtime wages due and owing to the Plaintiff as well as all applicable liquidated damages;

c. Declaring that Defendants' conduct violated the FLSA;

d. Enjoining Defendants from violating the FLSA's overtime and minimum wage provisions;

e. Awarding Plaintiff her reasonable attorneys' fees and costs of this action;

f. Awarding pre-judgment and post-judgment interest on all monetary amounts awarded in this action; and

      g.  Awarding such other general and equitable relief as this Court deems equitable and just.

(*Id.* at p. 6).

Practically speaking, Galeas achieved *none* of these objectives. Rather, she settled her case for $1,500 at a settlement conference presided over by the undersigned that took less than two hours to complete.[3] The path to that settlement included no written discovery requests or responses, no depositions, the production of no admissible evidence supporting any claim, no motion practice, and no effort to conditionally certify a collective class. Really, no *substantive* work was undertaken by Plaintiff's counsel over the case's six-month lifespan, save for attendance at a couple of *de rigueur* status conferences, which fortunately resulted in the District Judge ordering the parties to attend our single settlement conference, during which the case was settled.[4] The nature of that settlement agreement was memorialized *jointly* by the parties in their "Motion to Approve FLSA Settlement":

> Defendants deny the allegations in the Lawsuit and deny all liability and damages of any kind to anyone with respect to the alleged facts or causes of action asserted in the Lawsuit; nonetheless, without admitting or conceding any liability or damages, and solely to avoid the burden, expense and uncertainty of continuing to litigate Plaintiff's claims, the Parties have agreed to settle Plaintiff's claims in the Lawsuit on the terms and conditions set forth in a Settlement Agreement and Release of Claims ("Settlement Agreement") signed by all parties on August 15, 2018.

---

[3] Galeas was not required to attend the settlement conference and she did not. On the other hand, a representative of the Defendants did attend.

[4] The Court notes here that, in her motion papers, Plaintiff's counsel, Emily Westermeier, argues that after "several hours" of "complex settlement negotiations," an agreement was reached. (Rec. doc. 27-1). The undersigned was there the whole time and knows that the conference did not take several hours – it took all of one hour and 35 minutes and there was nothing at all "complex" about it. The Court can excuse counsel's hyperbolic description of the event, given that she was not there. But the Court will not credit any suggestion that settlement talks were lengthy or complex, because they were neither.

(Rec. doc. 41-1).

This verbiage is entirely consistent with Defendants' argument in their opposition to the present motion that they agreed to the $1,500 settlement largely because:

(a) They did not have to admit liability [because neither was liable];

(b) Galeas, through Applicant, agreed to completely release any and all claims that were or could have been brought arising out of her employment;

(c) Galeas, through Applicant, promised confidentiality;

(d) Galeas, through Applicant, promised not to seek re-employment;[5] and

(e) Galeas, through Applicant, agreed to dismiss the above captioned action.

(Rec doc. 30 at pp. 1-2).

Defendants point to these facts as support for their argument that Galeas should not be considered a prevailing party, despite having received a monetary settlement. In the alternative, they argue that any fee award should be drastically reduced because Galeas at most achieved partial success.

Galeas on the other hand argues that the court-approved settlement is akin to a judgment in her favor, making her a prevailing party. In the present motion, she originally sought a total of $8,750 in attorneys' fees. That number increased to $10,750 when Galeas filed her memorandum in reply to this motion. (Rec. doc. 39).[6]

---

[5] Defendants represent that Galeas breached this part of the agreement by contacting Staff Pro seeking re-employment sometime after the agreement was signed.

[6] The additional $2,000 is said to represent 4.5 hours working on the settlement agreement and 3.5 hours preparing a three-page reply brief at the rate of $250/hour for Plaintiff's counsel, Emily Westermeier. (Rec. doc. 39).

4

*B. Applicable Law*

Pursuant to 29 U.S.C. § 206(b), "[t]he court in [an FLSA] action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." While § 216(b) does not mention "prevailing parties," district courts in the Fifth Circuit typically apply prevailing party fee-shifting jurisprudence in FLSA cases. *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 n. 7 (5th Cir. 2006).

A district court has broad discretion in determining the amount of a fee award. *Associated Builders & Contractors of La., Inc. v. Orleans Parish School Board*, 919 F.2d 374, 379 (5th Cir. 1990)(*citing Hensley v. Eckerhart*, 461 U.S. 424, 436-37, 103 S.Ct. 1933, 1941 (1983)).

The "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. The product of this calculation is called the "lodestar." *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.), *cert. denied sub nom.* 516 U.S. 862, 116 S.Ct. 173 (1995). There is a strong presumption that the lodestar calculation produces a reasonable fee. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 130 S.Ct. 1662, 1673 (2010).

The party seeking attorneys' fees bears the burden of establishing the reasonableness of the fees by submitting adequate documentation and time records of the hours reasonably expended and proving the exercise of "billing judgment." *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997). Attorneys are required to make a good-faith effort to "... exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. . . ." *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939-40. Specifically, the party seeking the award must

show all hours actually expended on the case but not included in the fee request. *Leroy v. City of Houston*, 831 F.2d 576, 585 n. 15 (5th Cir. 1987). These requirements underlie the core principle that hours that are not properly billed to one's client are likewise not properly billed to one's adversary. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940.

After calculation of the lodestar, the burden shifts to the party opposing the application to contest the reasonableness of the hourly rate requested and/or the reasonableness of the hours expended ". . . by affidavit or brief with sufficient specificity to give [the] fee applicants notice . . ." of those objections. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3rd Cir. 1990).

Once the lodestar has been determined, the Court must then consider the applicability and relative weight of the 12 factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974). The 12 *Johnson* factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and, (12) awards in similar cases. *See id.*, 488 F.2d at 717-19.

While the Court may make upward or downward adjustments to the lodestar figure if the *Johnson* factors so warrant, the lodestar is presumptively correct and should be modified only in exceptional cases. *See Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993).

"The most critical factor in determining an attorney's fee award is the 'degree of success obtained.'" *Saizan*, 448 F.3d at 799 (*quoting Singer v. City of Waco, Tex.*, 324 F.3d 813,

829 (5th Cir. 2003)).  Important here, prevailing party status "may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Id.* (*quoting Hensley*, 461 U.S. at 436, 103 S.Ct. 1933).  "While a low damages award is one factor which the court may consider in setting the amount of fees, this factor alone should not lead the court to reduce a fee award." *Id.*

### C. Analysis

#### 1. Was Galeas a "Prevailing Party?"

The Defendants have argued at great length in their briefs and at the hearing that Galeas is not entitled to recover any attorneys' fees because she is not a "prevailing party" in keeping with this Circuit's "prevailing party" fee-shifting jurisprudence.  That argument is based upon the notions that:  (1) Galeas's settlement was only a small percentage of her original demand, (2) she was unable to and did not prove a violation of the FLSA, and (3) that she did not obtain any of the non-monetary relief she sought, *i.e.*, class certification, declaratory and injunctive relief, etc.  While the Court credits Defendants' factual arguments as mostly true, it nonetheless finds that Galeas is a prevailing party for purposes of the present motion.

First, the District Judge's Order approving the settlement in this case provides:

> Galeas and the defendants jointly move for approval of their Settlement Agreement.  The parties have not reached an agreement regarding the payment of attorney's fees and costs.  Nothing herein shall impact, impair, diminish, waive, release or bar the Galeas'[ ] right to seek and recover attorney's fees and costs or defendants' right to oppose her motion for attorneys' fees and costs.

(Rec. doc. 43 at p. 1).

This language evinces the parties' clear contemplation that Galeas would seek attorneys' fees and any suggestion that the parties' settlement somehow mooted that claim is wrong. Further, while Galeas' recovery was indeed nominal – a matter to be discussed below – she nonetheless recovered a sum of money in settlement of her claim and that sum was memorialized and approved by the District Judge. Ample authority exists that this alone is sufficient to find she is a prevailing party. *See, e.g.*, *Esparza v. Kostmayer Constr., LLC*, No. 15-CV-4644, 2017 WL 3336500 at *1 (E.D. La. Aug. 3, 2017) (finding "that the Plaintiffs' settlement with the Defendants did not moot their FLSA claim, and, because they received a judgment in their favor, they are entitled to attorneys' fees and costs from the Defendants.")(*citing Wolff v. Royal American Management, Inc.*, 545 Fed.Appx. 791 (11th Cir. 2013)).

As Galeas is a prevailing party in this litigation, the Court looks next to calculation of the lodestar.

### 2. Reasonable Hourly Rate

The benchmark of a reasonable hourly rate is the prevailing rate in the relevant legal market. *Hensley*, 461 U.S. at 447, 103 S.Ct. at 1946-47. In determining the prevailing market rate for these purposes, locale alone is not determinative; the Court must also endeavor to compare the requested rates to those prevailing in the relevant legal market ". . . for similar services by lawyers of reasonably comparable skill, experience and, reputation." *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 1547 n. 11 (1984). Indeed, "considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate." *Perdue*, 559 U.S. at 553, 130 S. Ct. at 1673 (internal quotation omitted).

The applicant bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates. *NAACP v. City of Evergreen, Alabama*, 812 F.2d 1332, 1338 (11th Cir. 1987). Such satisfactory evidence of the reasonableness of the rate necessarily includes an affidavit of the attorney performing the work. *Blum*, 465 U.S. at 896 n. 11, 104 S.Ct. at 1547 n. 11. As evidence, the fee-seeker's affidavit alone is usually insufficient, however; the reasonable hourly rate for a particular community is generally established through affidavits of other attorneys practicing there, not merely the attorney seeking the fee award. *Calix v. Ashton Marine LLC*, No. 14-CV-2430, 2016 WL 4194119 at *5 (E.D. La. July 14, 2016), *adopted*, 2016 WL 4180977 (E.D. La. Aug. 8, 2016)( *citing U.S. ex rel. Cook-Reska v. Cmty Health Sys., Inc.,* 641 Fed.Appx. 396, 400 (5th Cir. 2016); *Thompson v. Connick*, 553 F.3d 836, 867-68 (5th Cir. 2008), *rev'd on other grounds*, 563 U.S. 51, 131 S.Ct. 1350 (2011); *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)).

Finally, "the court need not accept the requested rate–even where it is reasonable and within prevailing market rates–if the court explains why it used a different rate." *U.S. ex rel. Cook-Reska v. Cmty Health Sys., Inc.,* 641 Fed.Appx. 396, 400 (5th Cir. 2016)(*citing Miller v. Raytheon Co.*, 716 F.3d 138, 149 (5th Cir. 2013); *Islamic Ctr. of Miss., Inc. v. City of Starkville*, 876 F.2d 465, 468-69 (5th Cir. 1989), *overruled on other grounds by Shipes v. Trinity Indus.,* 987 F.2d 511 (5th Cir. 1993)).

Here, counsel for Galeas request the following hourly rates: for William Beaumont ("Beaumont"), an attorney practicing "more than seven years" with the majority of his practice in FLSA cases, $300 per hour. (Rec. doc. 27-3 at pp. 2-3). And for Emily Westermeier ("Westermeier"), an attorney practicing "more than three years" exclusively in FLSA and collective action cases, $250 per hour. (*Id.*).

9

In support of counsel's application and their requested hourly rates, they submitted a joint declaration that describes their respective experience and practices and explains that they "set their rates for attorneys based on a variety of factors, including: the experience, skill, and sophistication required for the types of legal services typically performed; the rates customarily charged in similar matters in the case jurisdiction; and the experience, reputation, and ability of the attorneys." (*Id.*). The declaration does not contain any admissible proof about prevailing rates in this community.

An attorney's requested hourly rate is *prima facie* reasonable when he requests that the lodestar be computed at his customary billing rate, the rate is within the range of prevailing market rates, and the rate is not contested. *Kellstrom*, 50 F.3d at 329. In this case, counsel's declaration fails to even suggest that $300 and $250 per hour are their respective customary billing rates. The declaration merely demonstrates that these attorneys received *lesser* hourly rates on a handful of occasions, and then only once when those lower rates were contested.

Beaumont and Westermeier cite four cases in which they were awarded hourly rates of $250 and $200 respectively, three of which provide little or no support for their current request:[7]

- ***Esparza v. Kostmayer Constr., LLC***, No. 15-CV-4644, 2017 WL 4621107 (E.D. La. Sept. 26, 2017)(van Meerveld, M.J.), *adopted*, 2017 WL 4574416 (E.D. La. Oct. 13, 2017). Very much *unlike* the present matter, in *Esparza*, the plaintiffs conceded the settlement was "equal to all money possible under the FLSA." *Id.* at *1. The

---

[7] Nowhere in their brief or declaration do counsel even attempt to explain why they are entitled to $50 per hour increases in this case.

10

> Magistrate Judge in that case awarded $250 and $200 per hour to Beaumont and Westermeier, despite these figures being "on the high side in this community for this work," largely because *defendants did not challenge those rates. Id.* at *3.

- ***Martinez v. Southern Solutions Land Management***, No. 14-CV-2366 (E.D. La. July 9, 2015)(Milazzo, J.)(unpublished). The rates and amount of fees were the result of a *negotiated resolution*, and were therefore awarded with no analysis in a one-page order. *Id.*, rec. doc. 46.

- ***Portillo v. Permanent Workers, LLC***, No. 15-CV-1048 (W.D. La. Mar. 7, 2018)(Hanna, M.J.)(unpublished). Counsel's citation to this case is extremely problematic – after the Magistrate Judge issued the Report and Recommendation awarding the rates cited here by Beaumont and Westermeier, the District Judge *remanded* the matter based upon Defendants' joint objection to that decision. *Id.*, rec doc. 52. The matter remains pending and unresolved and should not have been cited in this case.

- ***Banegas v. Calmar Corp.***, No. 15-CV-0593 (E.D. La. Oct. 27, 2016)(Lemelle, J.)(unpublished). This is the *only* case cited by counsel in which they were actually awarded rates of $250 and $200 per hour after contested motion practice.

"Hourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rates that lions at the bar may command." *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000), *cert. denied*, 533 U.S. 929, 121 S.Ct. 2550 (2001)(internal quotation omitted); *accord U.S. ex rel. Cook-Reska* at *3. And, as noted above, any requested rate must be supported by sufficient evidence.

Here, counsel's requested hourly rates are wholly unsupported by anything in this record. These lawyers' requests for a $50 per hour increase from the highest award they've ever received is unmitigated overreaching. No affidavits of disinterested counsel or even Plaintiff's own counsel support the requested rates and no cases are cited in which such rates were ever awarded to these lawyers. Even the cases cited in which they were awarded hourly rates of $250 and $200 per hour are unconvincing. Perhaps not surprisingly, for instance, counsel fail to call the Court's attention to Magistrate Judge Wilkinson's July 2016 opinion in an FLSA case in which, after an in-depth analysis, he awarded Beaumont an hourly rate of $200 per hour where he had requested $250 per hour. *Calix*, 2016 WL 4194119 at *6.

I find Judge Wilkinson's reasoning persuasive here. Having been provided zero support for a $100 per hour increase since the *Calix* decision a mere two years ago and presented only with a self-serving joint declaration of counsel in this case to support their current out-sized request, I find that a reasonable rate for counsel in this matter is $225 per hour for Beaumont and $175 per hour for Westermeier.

This finding is further supported by the facts and procedural history of the case. Borrowing from counsel's own statement in their joint declaration, reasonable rates should depend on a variety of factors, including "the experience, skill, and sophistication required for the types of legal services typically performed…." (Rec. doc. 27-3 at p. 3). The actual litigation of this case could not have been simpler, and while the Court does not doubt Beaumont's and Westermeier's ability and expertise in litigating much tougher or more complex FLSA cases, the garden variety and largely administrative-type work done by them

12

in this case does not merit an hourly rate "on the high side in this community for this work." *Esparza,* 2017 WL 4621107 at *3.

### 3. Number of Hours Reasonably Expended

#### a. Billing Judgment

The party seeking attorneys' fees bears the burden of establishing the reasonableness of the fees by submitting adequate documentation and time records of the hours reasonably expended and proving the exercise of "billing judgment." *Wegner*, 129 F.3d at 822. Attorneys are required to make a good-faith effort to "... exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. . . ." *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939-40. Specifically, the party seeking the award must show all hours actually expended on the case but not included in the fee request. *Leroy*, 831 F.2d at 585 n. 15.

Counsel submitted to the Court time records that they affirm were contemporaneously kept. (Rec. doc. 27-2). Those time records do indeed reflect time expended but not included in the fee request. (*Id.*). Having reviewed these records, the Court finds that, while counsel did exercise billing judgment as required, the records nonetheless include certain entries that should be disallowed or reduced. Rather than apply the percentage reduction that courts in this circuit general employ in cases where billing judgment has not been sufficiently exercised, the Court will simply address the handful of problematic entries in counsel's time records.

| DATE | ATTORNEY | TASK | TIME |
|------|----------|------|------|
| April 18, 2018 | EAW | Amending Complaint to replace improperly named defendant | 0.5 hours |

13

This entry is disallowed. Defendants should not be assessed a fee for Plaintiff misnaming them.

| DATE | ATTORNEY | TASK | TIME |
|---|---|---|---|
| June 1, 2018 | WHB | Prepare for, travel to and from and attend settlement conference | 3.0 hours |

This entry will be reduced to 1.8 hours. Beaumont previously billed two hours to prepare for the June 1 settlement conference, which is more than sufficient in this case. The conference itself only last one hour and 35 minutes. Time spent traveling within the city to and from court is disallowed.

In Galeas's reply brief, counsel requested an additional $2,000 for eight hours of Westermeier's time following filing of their original motion. (Rec. doc. 39). The additional time is broken down as 4.5 hours related to negotiation and finalizing the settlement agreement and 3.5 hours conducting research for and drafting the reply brief. The 4.5 hours related to the settlement agreement were very clearly included in counsel's time records submitted with their motion. The reply-brief request is redundant and will be fully disallowed. The time related to the 3-page reply brief will be reduced by one hour to 2.5 hours.

After the foregoing adjustments, the lodestar in this case is established as follows:

- Westermeier:  31 hours at $175 per hour = $5,425.00
- Beaumont:     1.8 hours at $225 per hour = $855.00

- **Total (lodestar) = $6,280**

        b. *Success on the Merits*

As noted above, once the lodestar has been determined, the Court must then consider the applicability and relative weight of the 12 factors set forth in *Johnson*, 488 F.2d at 717-19. While the Court may make upward or downward adjustments to the lodestar figure if the *Johnson* factors so warrant, the lodestar is presumptively correct and should be modified only in exceptional cases. *See Watkins*, 7 F.3d at 459.

This is an exceptional case.

The Court finds a great many parallels between this case and *Saizan*, *supra*. In *Saizan*, the FLSA plaintiffs settled their claims for $20,000 after opening negotiations at a mediation with a demand of $159,640.76. *Id.*, 448 F.3d at 798.[8] As in this case, the matter of attorneys' fees was reserved by the parties for determination by the court.

After restating the well-established principle that "[t]he most critical factor in determining an attorney's fee award is the degree of success obtained," the Magistrate Judge turned to an analysis of the result obtained versus the claims and demands that had been made by Plaintiffs. (Rec. doc. 105 in No. 00-CV-0598). The Magistrate Judge found that "the record in this case supports a significant reduction in the lodestar due to the plaintiffs' failure to prevail on the key issues supporting their claim for monetary relief – method of calculation of overtime and entitlement to liquidated damages."

Noting that it was the plaintiffs' position on these issues that supported their claim of $159,640.76, the court found that the ultimate $20,000 settlement – without any admission of liability by the defendant – merited a substantial reduction in the lodestar. To calculate

---

[8] The undersigned's own additional research located the Magistrate Judge's Report and Recommendation in *Saizan*, which was adopted by the District Judge and affirmed by the Fifth Circuit. The details concerning the plaintiffs' opening demand at mediation in that case comes from that Report and Recommendation. (Rec. doc. 105 in No. 00-CV-0598).

15

that reduction, the court compared, as a simple matter of percentage, the plaintiffs' demand against the ultimate settlement.[9] The court applied that percentage reduction (roughly 12.5%) to the lodestar figure ($102,651.30) to arrive at a fee award of $13,000. *Id.* The District Court concurred with the Magistrate Judge's recommendation, granting the plaintiffs' attorneys' fees motion and awarding $13,000 in fees. *Saizan*, 448 F.3d at 799.

The Fifth Circuit affirmed the District Judge's decision and rejected the plaintiffs' argument that the District Court abused its discretion in reducing the fee award in proportion to the difference between the initial prayer and the ultimate settlement amount. In so doing, the Court noted:

> Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."
>
> *Id.* (*quoting Migis v. Pearle Vision*, 135 F.3d 1041, 1047 (5th Cir. 1998)).

In approving the District Court's approach, the Fifth Circuit catalogued the many categories of relief that the *Saizan* plaintiffs' had failed to obtain:

> The settlement agreement does not contain an admission of liability. Also, Plaintiffs failed to convince the court that they deserved overtime compensation, that the fluctuating worksheet method of calculating the amount of overtime compensation did not apply, that Delta Concrete willfully violated the wage hour law, or that Delta Concrete owed liquidated damages. Consequently, the District Court did not err in reducing the fee award.
>
> *Id.*

---

[9] The demand did not include attorneys' fees.

16

When compared with the prayers for relief in this case, it is apparent that Galeas was even less successful than the *Saizan* plaintiffs. As in *Saizan*, the Galeas settlement agreement contains no admission of liability and Galeas failed to convince the Court that Defendants willfully violated the wage law or that they owed liquidated damages. She further failed to establish entitlement to the declaratory and injunctive relief she sought and failed to certify – or even move for certification of – a conditional collective class. Consequently, a reduction *a la Saizan* is fully warranted here.

It also appears that a number of *Johnson* factors other than the amount involved and results obtained weigh in favor of reducing the lodestar. The time and labor involved; the novelty and difficulty of the questions; the skill requisite to perform the legal services properly; and the nature and length of the proceedings all weigh in favor of some reduction. All the other factors are neutral, save for the undesirability of the case, which weighs in favor of a moderate upward adjustment.

On balance, then, and after careful consideration of the record and the law, the Court will recommend a substantial reduction of the lodestar. Undertaking the same percentage reduction applied by the *Saizan* Court would yield a total award of $769.30,[10] an amount the Court finds insufficient to reasonably compensate counsel for their time in the case. *See NAACP*, 812 F.2d at 1338 ("[T]he ultimate goal of the trial court in considering a fee application is reasonable compensation."). Based on its review of the entire record in the case, the Court will recommend a 70% reduction in the lodestar rather than the 87.75% reduction that would result were the Court to strictly adhere to the *Saizan* approach.

---

[10] This figure is arrived at by calculating the percentage of the principal demand ($21,000 minus $8,750 in attorneys' fees = $12,250) represented by the $1,500 settlement. That percentage is 12.25% which, when applied to the lodestar of $6,280 results in a figure of $769.30.

17

**RECOMMENDATION**

Based upon all of the foregoing, the undersigned recommends that the Plaintiff's motion for attorneys' fees be **GRANTED IN PART AND DENIED IN PART** and that the Defendants be ordered to pay Plaintiff **$1,884.00** in attorneys' fees.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996)(en banc).[11]

New Orleans, Louisiana, this 12th day of September, 2018.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[11] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.